# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN ROLLINS,<br>　　　　Plaintiff,<br>　v.<br><br>R STREET INSTITUTE,<br>　　　　Defendant. | Civil Action No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

I. **INTRODUCTION**

1. "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility," 29 U.S.C. § 206(d)(1); M.G.L. c. 149, § 105A(b) (no employer shall discriminate in wages between sexes "for work of like or comparable character or work on like or comparable operations"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*; M.G.L. c. 151B § 4.

2. Employers also have a duty to permit employees to make good-faith complaints of gender-based wage discrimination and may not retaliate against them when they do. 29 U.S.C. § 215 *et. seq.;* M.G.L. c. 149, § 105A(c)(3); 42 U.S.C. § 2000e *et. seq*. These rules protect Massachusetts workers from discrimination in their wages and retaliation in the workplace when they take steps to oppose it.

3. Here, Defendant, R Street Institute ("R Street" or "Defendant") employed Plaintiff, Lauren Rollins ("Rollins" or "Plaintiff") to perform the duties of an editor-in-chief and,

1

later, Associate Vice President in its Policy Department, but paid her tens of thousands of dollars less per year than the male employees who performed the same positions requiring equal skill, effort, and responsibility immediately before she assumed the roles.  In the early fall of 2021, Plaintiff verbally complained to her supervisor about pay equity issues within Defendant's organization.  Plaintiff's supervisor retaliated against Plaintiff for making those complaints, and terminated her employment in October 2021.

4. Defendant's conduct in underpaying and retaliating against Plaintiff violates state and federal anti-discrimination laws, and has caused her and continues to cause her substantial financial harm as well as non-economic damages, attorney's fees and court costs.

## II. **PARTIES**

5. Defendant R Street is a non-profit corporation, whose primary place of business is located in Washington, D.C.

6. Plaintiff Lauren Rollins is a resident of Northampton Massachusetts.

7. Defendant R Street is Plaintiff's employer as that term is defined by 29 U.S.C. § 203(d); M.G.L. c. 149, § 1; 42 U.S.C. § 2000e(b); M.G.L. c. 151B, § 1(5).

8. Since 2017, Defendant R Street has employed at least three (3) individuals in Massachusetts.

9. Defendant R Street has employed at least fifteen (15) individuals during the period of the claim.

## III. **JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has jurisdiction over Plaintiff's claims brought under the federal Equal Pay Act pursuant to 29 U.S.C. § 216(b).

12. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims in this Complaint occurred in Massachusetts.

13. Plaintiff filed timely administrative claims with the Massachusetts Commission Against Discrimination and Equal Employment Opportunity Commission.

14. On April 7, 2022, the Massachusetts Commission Against Discrimination authorized Plaintiff to pursue her state statutory claims in state of federal court.

15. On April 27, 2022, the Equal Employment Opportunity Commission authorized Plaintiff to pursue her federal statutory claims in state or federal court.

## IV.  **FACTUAL ALLEGATIONS**

16. Defendant R Street is a free-market think tank based in Washington D.C.

17. Defendant hired Plaintiff on or about June 1, 2017, as an Editorial Manager in Policy and assigned her a starting salary of $80,000 per year.

18. Plaintiff is female.

19. During the time Plaintiff worked as Editorial Manager, she reported to R.J. Lehmann, the Editor-in-Chief ("Mr. Lehmann").

20. Defendant paid Mr. Lehmann $135,000 per year in 2017 when he served in the role of Editor-in-Chief.

21. Mr. Lehmann reported to Kevin Kosar, Vice President ("VP") of Policy ("Mr. Kosar") who, as of 2017, earned $188,000 per year.

22. In 2018, Mr. Lehmann stepped down from his position as Editor-in-Chief position to pursue another role in the company.

23. When Mr. Lehmann stepped down, R Street assigned Plaintiff to take over Mr. Lehmann's role as head of the department.

24. Defendant assigned Plaintiff to perform the responsibilities of the Editor-in-Chief but did not increase Plaintiff's salary.

25. During 2018, while she was performing the duties of the head of the department, Defendant assigned Plaintiff additional duties and two new direct reports.

26. Plaintiff's duties as head of the department were to use her background in qualitative research production to increase the quality and rigor of R Street's research products, to devise new publication products in response to organizational need, to hire and manage all editorial staff and two external graphics contractors, to edit the organization's white papers and any other 'overflow' editing that could not be handled by direct reports, to contribute to proposal development and editing, to maintain and manage the editorial calendar, to devise and maintain all product guidelines and submissions standards, to work directly with authors on content edits or in the pre-drafting phase, to train policy staff in research and writing techniques and standards, to create and manage all publications workflows, to represent editorial on the organizational level as part of the internal working group (a senior management cohort), to represent the brand and its publications internally and externally to stakeholders and donors when necessary, to serve as a fellow in various policy areas when requested, and to serve as editor-in-chief of legbranch.org (an external microsite under the R Street governance team's brand).

27. In October 2018, Defendant raised Plaintiff's salary to $100,000 per year.

28. Around November 2019, Defendant R Street hired Mazen Saleh ("Mr. Saleh") as Associate Vice President ("AVP") of Policy Management. Defendant assigned Plaintiff to report to him.

29. Defendants assigned Mr. Saleh a salary of approximately $170,000 per year as the AVP of Policy Management.

30. In March 2020, Defendant increased Plaintiff's salary to $110,000 per year.

31. In or around late 2020 or early 2021, Senior VP of Operations and Finance, Erica Schoder ("Ms. Schoder") indicated to Plaintiff that Mr. Saleh had been struggling in his role as AVP.

32. As a result, the role of AVP Policy Management (formerly VP Policy under Mr. Kosar) was bifurcated into two roles.

33. Mr. Saleh became the Associate Vice President of Portfolio Management, and Plaintiff was promoted to the position of Associate Vice President of Research Programs.

34. Defendant offered Plaintiff $140,000 per year to become the AVP of Research Programs.

35. Plaintiff's role as AVP of Research Programs involved taking over the lion's share of Mr. Kosar's original role of VP Policy.

36. Plaintiff's duties as AVP of Research Programs were to oversee 8 distinct policy areas and contribute or advise as requested (Governance and Budget; Criminal Justice; Energy and Environment; Competition Policy; Finance, Insurance and Trade; Integrated Harm Reduction; Cybersecurity and Emerging Threats; and Tech and Innovation); oversee publications/editorial department; manage 11 direct reports; work with program directors to determine individual and cross-departmental policy priorities and to align daily activities and products with demonstrable goals; work directly with the president to devise impact metrics for the policy and editorial teams; devise equitable title structures and revise job descriptions for the policy directors and devise equitable pathways for promotion and professional development for the policy team as a whole; liaise between the

8 policy teams and policy as a whole and all shared service department heads to reduce siloing, increase efficiency, and increase communication around shared processes/decrease disconnects; coach, mentor and train policy staff as necessary.

37. Mr. Saleh's duties as AVP of Portfolio Management were to ensure the health and sustainability of the overall financial portfolio of the policy team, to manage the build and roll-out of the Salesforce platform for policy teams, and to manage 1 direct report (Plaintiff).

38. Defendant assigned Plaintiff to continue reporting to Mr. Saleh.

39. Defendant did not place Plaintiff on the executive team, even though she was assigned and performing duties typically assigned to executive team members.

40. In July 2021, Mr. Saleh stepped down as AVP Portfolio Management and his responsibilities were reallocated to Plaintiff, Justina Yee ("Ms. Yee"), and Rebecca Kendall ("Ms. Kendall"), Manager of Strategic Initiatives.

41. Approximately one month later, Ms. Yee resigned, and, at that point, Plaintiff absorbed significant parts of her job as well. Ultimately, all of Mr. Saleh's job functions relative to policy and the policy directors were assigned to Plaintiff and/or a new employee that she would direct.

42. These shifts effectively consolidated the duties of three former Executive Team positions onto Plaintiff, thereby adding responsibilities that were significantly beyond those that had been assigned to Mr. Kosar when he served as VP of Policy.

43. Plaintiff's duties in this increased role included devising and spearheading an entirely new collaborative strategic planning process for the organization (previously Ms. Yee's role); working directly with business development and finance to set and roll out fundraising goals for each policy team (a function of Mr. Saleh's previous role managing the financial portfolio); working directly with president or policy directors as requested to raise

organizational funding or secure renewals and to adjudicate disconnects with donor expectations and organizational capacity; managing risk for the organization including working directly with external counsel to help research, interview, and negotiate a previous lawsuit filed by R Street against a former employee.

44. Plaintiff did not receive a salary increase from $140,000 per year.

45. In the early summer of 2021, Plaintiff submitted a raise request for Emily Temple ("Ms. Temple"), the Director of Publications.

46. Defendant R Street agreed to increase Ms. Temple's salary.

47. During a call to notify Ms. Temple of her salary adjustment, Plaintiff learned (from Ms. Temple) that she had not been eligible to receive that year's Cost-of-Living Adjustment ("COLA") increase.

48. Plaintiff contacted Ms. Schoder to explain that the pay increase was insufficient and asked her to approve a new raise request for a higher amount or, alternatively, at least to give Ms. Temple the COLA.

49. The conversation that ensued with Ms. Schoder was extremely contentious. Plaintiff was surprised that Ms. Schoder became immediately combative. Ms. Schoder accused Plaintiff of "not being satisfied" even though R Street had agreed to raise Ms. Temple's pay.

50. During this conversation, Plaintiff raised other pay equity issues at the workplace between men and women.

51. Plaintiff explicitly pointed out that Ms. Schoder had told her that there were no available funds to give her a raise.

52. Plaintiff pointed out that, Bill Gray ("Mr. Gray"), a more recent male hire as Communications Director was offered a higher salary than Plaintiff earned when she had

been in Ms. Temple's position although Mr. Gray had less management experience, less time in his career, less tenure with the organization, and less relevant education than Plaintiff did when she held the position.

53. Plaintiff complained that it was unfair for Ms. Temple to be paid substantially less than Mr. Gray given their respective roles and responsibilities.

54. Ms. Schoder became visibly angry when Plaintiff compared Ms. Temple to Mr. Gray. Plaintiff asked Ms. Schoder to explain the organization's rationale for why Mr. Gray was making substantially more than Ms. Temple given her educational and professional background, their similar tenure, and her lateral role within the organization if it wasn't about "who they were" (meaning their genders).

55. Ms. Schoder became increasingly flustered by Plaintiff's questions and ended the call by telling her that she would speak with Operations and get back to her.

56. That evening, Plaintiff contacted Joi Washington, Director of Operations ("Ms. Washington"), for her advice/guidance and to report to her about the acrimonious conversation with Ms. Schoder. Ms. Washington was already aware of the discussion because Ms. Schoder had apparently reported to her that Plaintiff was 'bullying' Ms. Schoder for more money for direct reports.

57. During this conversation, Ms. Washington notified Plaintiff that Ms. Schoder had reluctantly decided to raise Ms. Temple's salary to $120,000, but that Ms. Washington had been told by Ms. Schoder to withhold this information from Plaintiff until a later time because Ms. Schoder 'didn't want [Plaintiff] to think [she] had won.'

58. The following day Plaintiff met with R Street's President, Eli Lehrer ("Mr. Lehrer") and Ms. Schoder, at which point Ms. Schoder officially notified Plaintiff that her request to raise Ms. Temple's salary had been approved.

59. Also, Ms. Schoder indicated that, in response to Plaintiff's request, Operations had evaluated the salaries of other individuals including Caroline Kitchens ("Ms. Kitchens") and her direct report, Marc Hyden ("Mr. Hyden").

60. Mr. Lehrer stated that he did not want to inform Ms. Kitchens that her pay had been raised for "pay equity reasons." Rather, he wanted to tell her that the raise was performance-based. Plaintiff pushed back and suggested that he be honest about the reasons for the raise and that the raise took pay equity issues into account.

61. The following day, Ms. Schoder brought up the pay equity raise for Ms. Temple and Ms. Kitchens during a phone call and told Plaintiff that she wanted her 'on board" with R Street's messaging that the raise was not an "equity" raise.

62. Plaintiff pushed back believing that Defendant should be honest about it. Ms. Schoder said something along the lines of "if we acknowledge that this was an equity raise, more people in the organization may come forward and request to have their salaries evaluated on those terms."

63. Plaintiff held her ground and essentially made clear that she was not going to deny that the raise was an equity raise. Ms. Schoder raised her voice saying that Plaintiff needed to "disagree and commit" to R Street's messaging.

64. Shortly after, Plaintiff began experiencing a pattern of retaliation perpetrated by Ms. Schoder.

65. Throughout September and October 2021, Ms. Schoder began withholding information from her that was designed to set her up for failure. She also began refusing support for simple requests that were in keeping with Plaintiff's role and responsibilities.

66. Plaintiff observed that Ms. Schoder began suggesting that Plaintiff had performance problems when, in fact, there had been none.

67. Ms. Schoder began claiming that she and Plaintiff had "mismatched priorities."

68. Ms. Schoder would not provide specific information about what those "mismatched priorities" were, even when Plaintiff asked.

69. Ms. Schoder suggested that Plaintiff was "taking on too much" and was "having difficulty prioritizing."

70. On October 12, 2021, Ms. Schoder inserted herself into a personnel matter involving one of Plaintiff's direct reports. The employee at issue had documented performance problems and had been insubordinate on the day in question. Rather than allowing Plaintiff to address the issue, Ms. Schoder met directly with two of that employee's direct reports and did not allow Plaintiff to attend the meeting.

71. Ms. Schoder's actions were a strict departure from the company's standard expectation to resolve disconnects with direct feedback between managers and direct reports. Ms. Schoder did not allow Plaintiff even to speak to the employee in question or his direct reports before intervening.

72. Discussions about this employee continued over the course of the week during which point Ms. Schoder accused Plaintiff of 'targeting' the male employee.

73. On Monday, October 18, 2021, Plaintiff attended a Monday morning check-in with Ms. Schoder. During the call, Plaintiff informed Ms. Schoder that she wrote a memo proposing a re-set of their working relationship in light of their recent disagreements. Plaintiff asked for permission to share the memo with an executive coach, Ann Latham ("Ms. Latham"), whom they jointly shared. Ms. Schoder assented. After the phone call Plaintiff emailed the memo to both Ms. Schoder and Ms. Latham.

74. Approximately two hours later, Plaintiff received a call from Ms. Latham in which she warned Plaintiff to "find another job" but also expressed some hope that the memo might be used as a starting point to address some much-needed change.

75. On or about October 19 or October 20, Ms. Schoder and Plaintiff received an email from Ms. Latham, notifying them that she was resigning as their executive coach and would no longer serve in the role. In that email, she specifically addressed Ms. Schoder and wrote that she "needed to pay her employees fairly[.]"

76. On October 21, 2021, Ms. Schoder terminated Plaintiff effective immediately. The reasons given by Ms. Schoder for terminating Plaintiff did not make sense and were related to her assessment of Plaintiff's "autonomy" and "priorities."

77. Defendant's conduct, as described above, violates the federal equal pay act, Massachusetts equal pay act, Title VII, and the Massachusetts Civil Right Act.

## V. LEGAL CLAIMS

### COUNT ONE
### UNEQUAL PAY IN VIOLATION OF FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206(d)

78. As described above, throughout her tenure, Defendant paid Plaintiff wages, at a rate that was substantially less than her male peers for equal work despite the fact that this work required equal skill, effort, and responsibility and was performed under similar working conditions.

79. Defendant's decision to compensate Plaintiff at this lower rate violated the Equal Pay Act, 29 U.S.C. § 206(d).

80. As a direct and proximate result of Defendant's illegal conduct, Defendant has caused Plaintiff to incur economic damages, including lost income and lost benefits, and attorney's fees and costs.

## COUNT TWO
## UNEQUAL PAY IN VIOLATION OF THE MASSACHUSETTS EQUAL PAY ACT, M.G.L. c. 149, § 105(A) *et seq.*

81. As described above, throughout her tenure, Defendant paid Plaintiff wages, at a rate that was substantially less than her male peers for "comparable work" despite the fact that this work required "substantially similar skill, effort and responsibility and is performed under similar working conditions."

82. Defendant's decision to compensate Plaintiff at this lower rate violated the Massachusetts Equal Pay Act, M.G.L. c. 149, § 105(A).

83. As a direct and proximate result of Defendant's illegal conduct, Defendant has caused Plaintiff to incur economic damages, including lost income and lost benefits, and attorney's fees and costs.

## COUNT THREE
## ILLEGAL DISCRIMINATION ON ACCOUNT OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E *et seq.*

84. As set out more fully above, Defendant's treatment of Plaintiff – specifically Defendant's discriminatory pay practices – were motivated at least in part because of Plaintiff's sex – female.

85. Defendant's conduct as described above violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000E *et seq.*

86. As a direct and proximate result of Defendant's unlawful treatment of Plaintiff, Defendant has caused Plaintiff to incur economic damages, including lost income and lost benefits, non-economic damages, and attorney's fees and costs.

## COUNT FOUR
### ILLEGAL DISCRIMINATION ON ACCOUNT OF SEX IN VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT, M.G.L. c. 151B *et seq.*

87. As set out more fully above, Defendant's treatment of Plaintiff – specifically Defendant's discriminatory pay practices – were motivated at least in part because of Plaintiff's sex – female.

88. Defendant's conduct as described above violated the Massachusetts Civil Rights Act, M.G.L. c. 151B *et seq.*

89. As a direct and proximate result of Defendant's unlawful treatment of Plaintiff, Defendant has caused Plaintiff to incur economic damages, including lost income and lost benefits, non-economic damages, and attorney's fees and costs.

## COUNT FIVE
### ILLEGAL RETALIATION AGAINST PLAINTIFF IN VIOLATION OF FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206(d)

90. As set forth above, in the summer of 2021, Plaintiff verbally complained of pay equity issues regarding herself and Ms. Temple.

91. Defendant terminated Plaintiff for complaining about pay equity disparities within Defendant's workplace within weeks of her complaints to Ms. Schoder about Ms. Temple and her own wages.

92. Defendant's stated reasons as described above were merely pretextual. Defendants fired Plaintiff for her opposing discriminatory pay practices regarding Defendant's female employees.

93. By terminating her employment, Defendant has violated 29 U.S.C. § 215(a)(3) of the Fair Labor Standards Act, which prohibits retaliation against an employee for verbally complaining about an equal pay act violation.

94. As a result of the conduct of Defendant's described above, Plaintiff has suffered lost wages, benefits and other perquisites of employment, suffered pain and suffering, and other emotional distress as well as incurred attorney's fees.

## COUNT SIX
## ILLEGAL RETALIATION IN VIOLATION OF THE MASSACHUSETTS EQUAL PAY ACT, M.G.L. c. 149, § 105(A) *et. seq.*

95. As set forth above, in the early fall of 2021, Plaintiff verbally complained of pay equity issues regarding herself and Ms. Temple.

96. Defendant terminated Plaintiff for complaining about pay equity disparities within Defendant's workplace within several weeks of her complaints to Ms. Schoder about Ms. Temple and her own wages.

97. Defendant's stated reasons as described above were merely pretextual. Defendants fired Plaintiff for her opposing discriminatory pay practices regarding Defendant's female employees.

98. By terminating her employment, Defendant has violated M.G.L. c. 105A(c)(3), which prohibits retaliation against an employee "because the employee … opposed any act or practice made unlawful by this section[.]"

99. As a result of the conduct of Defendant described above, Plaintiff has suffered lost wages, benefits and other perquisites of employment, suffered pain and suffering, and other emotional distress as well as incurred attorney's fees.

## COUNT SEVEN
## ILLEGAL RETALIATION AGAINST PLAINTIFF IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S. § 2000E *ET. SEQ*

100. As set forth above, in the early fall of 2021, Plaintiff verbally complained of pay equity issues regarding herself and Ms. Temple.

101. Defendant terminated Plaintiff for complaining about pay equity disparities within Defendant's workplace within several weeks of her complaints to Ms. Schoder about Ms. Temple and her own wages.

102. Defendant's stated reasons as described above were merely pretextual. Defendants fired Plaintiff for her opposing discriminatory pay practices regarding Defendant's female employees.

103. By terminating her employment, Defendant has violated 42 U.S.C. § 2000e *et seq.*, which prohibits retaliation against an employee for opposing a discriminatory employment practice.

104. As a result of the conduct of Defendant's described above, Plaintiff has suffered lost wages, benefits and other perquisites of employment, suffered pain and suffering, and other emotional distress as well as incurred attorney's fees.

## COUNT EIGHT
## ILLEGAL RETALIATION AGAINST PLAINTIFF IN VIOLATION OF
## M.G.L. c. 151B § 1 et seq.

105. As set forth above, in the early fall of 2021, Plaintiff verbally complained of gender discrimination issues regarding herself and Ms. Temple.

106. Defendant terminated Plaintiff for complaining about gender discrimination matters

107. By terminating her employment, Defendant has violated M.G.L. c. 151B § 1 *et seq.*, which prohibits retaliation against an employee for opposing a discriminatory employment practice.

108. As a result of the conduct of Defendant described above, Plaintiff has suffered lost wages, benefits and other perquisites of employment, suffered pain and suffering, and other emotional distress as well as incurred attorney's fees.

## PRAYER FOR RELIEF

### COUNT ONE
### UNEQUAL PAY IN VIOLATION OF FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206(d)

1. Lost wages, pursuant to 29 U.S.C. § 206(d);

2. Liquidated damages, pursuant to 29 U.S.C. § 260;

3. Attorney's fees, costs, pre- and post-judgment interest, pursuant to 29 U.S.C. § 216(b);

4. Punitive damages; and

5. Any and all other relief as the Court deems just and proper.

### COUNT TWO
### UNEQUAL PAY IN VIOLATION OF THE MASSACHUSETTS EQUAL PAY ACT, M.G.L. c. 149, § 105(A) *et seq.*

1. Lost wages, pursuant to M.G.L. c. 149, § 105(A)(b);

2. Liquidated damages, pursuant to M.G.L. c. 149, § 105(A)(b);

3. Attorney's fees and costs pursuant to M.G.L. c. 149, § 105(A)(b);

4. Punitive damages;

5. Pre-judgment interest on Plaintiff's lost wages in accordance with M.G.L. c. 231 § 6H;

6. Post-judgment interest; and

7. Any and all other relief as the Court deems just and proper.

## COUNT THREE
### ILLEGAL DISCRIMINATION ON ACCOUNT OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E *ET. SEQ.*

1. Lost wages, benefits and other perquisites of employment, pursuant to 42 U.S.C. § 2000e-5;

2. Compensatory damages, pursuant to 42 U.S.C. § 1981a;

3. Punitive damages, 42 U.S.C. § 1981a;

4. Attorney's fees and costs, 42 U.S.C. § 2000e-5;

5. Interest; and

6. Such other and further relief as the Court deems just and equitable.

## COUNT FOUR
### ILLEGAL DISCRIMINATION ON ACCOUNT OF SEX IN VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT, M.G.L. c. 151B *et seq.*

1. Lost wages, pursuant M.G.L. c. 151B, § 9;

2. Compensatory damages, including lost benefits, emotional distress and mental anguish, and pain and suffering pursuant M.G.L. c. 151B, § 9;

3. Punitive damages;

4. Attorney's fees and costs pursuant M.G.L. c. 151B, § 9; and

5. Any and all other relief as the Court deems just and proper.

## COUNT FIVE
### ILLEGAL RETALIATION AGAINST PLAINTIFF IN VIOLATION OF FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206(d)

1. Lost wages, pursuant to 29 U.S.C. § 215(a)(3);

2. Liquidated damages, pursuant to 29 U.S.C. § 215(a)(3);

3. Attorney's fees and costs, pursuant to 29 U.S.C. § 216(b);

4. Post-judgment interest;

5. Reinstatement pursuant to 29 U.S.C. § 216(b);

    6.    Punitive damages; and

    7.    Any and all other relief as the Court deems just and proper.

## COUNT SIX
## ILLEGAL RETALIATION IN VIOLATION OF THE MASSACHUSETTS EQUAL PAY ACT, M.G.L. c. 149, § 105(A) *et. seq.*

    1.    Lost wages, pursuant to M.G.L. c. 149, § 105(A)(b);

    2.    Liquidated damages, pursuant to M.G.L. c. 149, § 105(A)(b);

    3.    Attorney's fees and costs pursuant to M.G.L. c. 149, § 105(A)(b);

    4.    Pre- and post-judgment interest;

    5.    Punitive damages; and

    6.    Any and all other relief as the Court deems just and proper.

## COUNT SEVEN
## ILLEGAL RETALIATION AGAINST PLAINTIFF IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S. § 2000E *ET. SEQ*

    1.    Lost wages, benefits and other perquisites of employment, pursuant to 42 U.S.C. § 2000e-5;

    2.    Compensatory damages, pursuant to 42 U.S.C. § 1981a;

    3.    Punitive damages, pursuant to 42 U.S.C. § 1981a;

    4.    Attorney's fees and costs, pursuant to 42 U.S.C. § 2000e-5;

    5.    Interest; and

    6.    Such other and further relief as the Court deems just and equitable.

## COUNT EIGHT
## ILLEGAL RETALIATION AGAINST PLAINTIFF IN VIOLATION OF M.G.L. c. 151B § 1 et seq.

    1.    Lost wages, pursuant M.G.L. c. 151B, § 9;

    2.    Compensatory damages, including lost benefits, emotional distress and mental anguish, and pain and suffering pursuant M.G.L. c. 151B, § 9;

3. Punitive damages;

4. Attorney's fees and pursuant M.G.L. c. 151B, § 9; and

5. Any and all other relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff requests a trial before a jury on all issues so triable.

|  |  |
|---|---|
|  | The Plaintiff,<br>LAUREN ROLLINS,<br>By her attorney, |
| Dated:  May 10, 2022 | /s/ Raymond Dinsmore (BBO # 667340)<br>Raymond Dinsmore (BBO # 667340)<br>Hayber, McKenna & Dinsmore, LLC<br>One Monarch Place, Suite 1340<br>Springfield, MA  01144<br>Tel: 413-785-1400; Fax: (860) 218-9555<br>eMail:  rdinsmore@hayberlawfirm.com |